## HEIRS OF S. HENDERSON *v.* P. A. ROST and J, MONTGOMERY.

In the will of the testator there was the following clause: "Two thousand dollars per annum to be paid to the poor of the town of Dunblane, in Perthshire, North Britain. This sum to be divided by the resident minister of the Presbyterian church, and the two highest civil officers in the town, to be paid upon due proof of the acceptance of the trust, say $2000. Two thousand dollars for the erection of a school-house, in the town of Dunblane, for ten years only, and for the purpose of educating the poor, this being the place of my birth." There were no officers, or persons, who, in any legal or judicial sense, would answer the description of the two highest civil officers, in the town of Dunblane. In the courts of Scotland, the legacy would not be sustained, but would be held as lapsed, from uncertainty and the want of proper persons qualified to accept the same. By the Court: It seems, therefore, that as no action can be maintained against the executors, for the recovery of this legacy, they are not authorized to retain the funds of the succession, for the purpose of paying it.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *E. Briggs*, for plaintiffs. *P. Soulé*, for defendants. By the court: (*Rost*, J. declined sitting.)

EUSTIS, C. J. *Stephen Henderson* died in New Orleans, in March,' 1838, leaving two wills, which were admitted to probate. The heirs at law of the estate were: 1st, *Thomas* and *Jean Henderson*, the only children of *Patrick* or *Peter Henderson*, deceased, the eldest brother of the testator. 2d. *Ann Henderson*, his sister. 3d. *John Henderson*, his brother. The interest of the heirs of *Peter Henderson*, was extinguished by a compromise, dated on the 17th of April, 1839. They were not mentioned in the will. The interests of the other

two branches, who, under the will, would have been entitled to claim certain legacies, were settled by an agreement, allotting one fourth part of the succession to each of the following parties, viz : One-fourth to *Ann Henderson*, one-fourth part to *John Henderson*, one-fourth part to *Stephen Henderson, Junior*, and one-fourth part to *George Henderson* and *Caroline Eugenie Henderson*, wife of *Whitman Willcox*, who, as well as *Stephen Hendersen, Jr.*, were the children of *John Henderson*, by his first marriage. Of these, all are now living, except *John*, who died, leaving, by a second marriage, *John, George, Helen*, and *Jean Henderson*, who are parties to this suit, by the trustees and executors of their father's will.

A suit had been instituted, by *Thomas Henderson* and *Jean Henderson*, the heirs of *Peter Henderson*, to set aside the provisions of the wills of the testator, which was terminated by the compromise before spoken of. The donations in favor of the general charitable institutions, were satisfied by transfers of property in the city, and the residue of the property of the succession was disposed of. The Forest plantation, and the slaves attached to it, were transferred to *George* and *Caroline Engenie Henderson*, wife of *Whitman Willcox*, and the Elm Park plantation and its slaves to *Stephen Henderson*. The Destrehan plantation and its slaves were sold to *P. A. Rost*, and the undivided half of the Mount Houmas plantation was sold to the owner of the other half, *Henry Doyal*. It is not necessary to note the various agreements of the parties, relating to this settlement, it is sufficient, for the present inquiries, to state, that the slaves and plantations were sold together, under an obligation of the parties acquiring them, to comply with the provisions of the will, in relation to the slaves, if the same should be adjudged to be valid, and to be carried into execution.

The wills of the testator are published in full, in the report of the case, in which the court determined certain testamentary dispositions to be invalid. 5 Ann. 458, *et seq*.

This appeal is taken by the plaintiffs, who are the heirs of the late *Stephen Henderson*, from a judgment of the Court of the Fourth District of New Orleans, by which their petition was dismissed, with costs.

The suit was instituted for the purpose of compelling the defendants, who are the executors of the testator, to account for, and to pay over to them, their several shares of the assets of the succession. The defendants insist on their right to retain certain funds, for the purpose of carrying into effect the testamentary dispositions of the testator, and ask such a decree from the court as will enable them to liquidate the succession under their charge.

The case was before the court in May term, 1850, and certain articles of the will were declared void and of no effect. It is reported in 5 Ann. 467. One of the questions upon which the opinion of the court was reserved, related to the liberation of the slaves of the testator; that, and the one relating to the legacy in favor of the poor of the town of Dunblane, in Perthshire, in Scotland, have been argued at bar. The judgment in the court below, seems to have been *pro formâ* merely; the argument before us, has been very thorough, and well prepared.

The questions concerning the condition and liberation of the slaves having been reserved for consideration, it only remains for us to consider the validity of the legacy in favor of the poor of the town of Dunblane.

It is in these words : " Two thousand dollars per annum to be paid to the poor of the town of Dunblane, in Perthshire, North Britain. This sum to be

divided, by the resident minister of the Presbyterian church and the two highest civil officers in the town; to be paid upon due proof of their acceptance of the trust, say $2000. Two thousand dollars for the erection of a school house in the town of Dunblane, for ten years only, and for the purpose of educating the poor, this being the place of my birth."

We have been favored with the depositions of two witnesses, in relation to this legacy, which, as matters of legal learning of the law of Scotland, we should be glad to give entire, but the length to which the opinions in this case have already been extended, prevents it. The witnesses, *Allen Alexander Maconochie, Esq.*, member of the Faculty of Advocates and Professor of the Roman law in the University of Glasgow, and *John Watkins, Esq.*, of Glasgow, one of the writers of her Majesty's signet. The result of their testimony appears to be this:

The town of Dunblane is not an incorporated town; it has no corporative powers, privileges, or establishment, but is, and has been, since the passage of the jurisdiction act of George II., as it is called, a mere village in the Barony of Cranlix and Dunblane, and county of Perth, since which time the town, as part of the county of Perth, has been under the ordinary jurisdiction of the Queen's courts. The hereditary office of Bailie, of the Regality of Dunblane, with the jurisdiction and powers anciently appertaining thereto, was abolished by the act of Parliament referred to, and there are no officers or persons who, in any legal or judicial sense, would answer the description of the two highest civil officers in the town of Dunblane. There is a resident minister, who resides in his manse, situated on the glebe, in or near that town, and who is minister of the parish of Dunblane, of which the town of Dunblane forms only a small portion.

In the interrogatories and answers, the terms used are, the two highest civil officers of the town of Dunblane. The word " in " is made use of in the will, instead of "of the town." But we think the difference, in this respect, is merely verbal, and that the true meaning of the will is, "officers of the town." Under the circumstances, we can only consider it as applying to persons in the condition of magistrates, belonging to the town of Dunblane. Although there may happen to be justices of the peace, or one of the sheriff's substitutes, residing within the town, yet they would no more answer the description than any other of the justices or sheriffs' substitutes of the county of Perth.

These two learned gentlemen, whose opinions appear to have been prepared with great care and research, concur in stating that, in the courts of Scotland, the legacy in question would not be sustained, but would be held as lapsed, from uncertainty and the want of proper persons qualified to accept the same. They also concur in stating that, although the town of Dunblane should be incorporated by act of Parliament, and thus, for the future rendered capable of receiving such a bequest as the present, it would be deemed unconstitutional, and against all precedent of the rules and practice of Parliament to pass any act having a retroactive effect, or affecting the rights of parties in impending suits or litigations; and thus there is no means by which the deficiency of the want of authority to accept this legacy can be supplied.

It is further in evidence, that there has been no demand ever made on the executors, by any person, for these legacies, and no notice has been given that they would ever be claimed; and it is not pretended that executors intend, or have ever attempted, to carry into effect any part of this legacy, of themselves

and as trustees under the will. One of them, *Judge Rost*, in the summer of 1838, repaired to Scotland, on business of the succession, and had an interview with the *Rev. John Grierson*, the resident minister at Dunblane. That respectable gentleman then stated to the executor, that he was already informed of the dispositions of *Mr. Henderson's* will, in favor of the town and the poor of Dunblane; that there were no civil officers of that town having capacity to receive those legacies; that the town of Dunblane was unincorporated, and had no jurisdiction separate from that of the county of Perth; that the town of Dunblane could not be benefited by the legacy, and that the inhabitants thereof were opposed to receiving it; that, under the law of Scotland, the heritors of the county of Perth were bound to tax themselves annually for the support of the poor of the county; that the inhabitants of the town of Dunblane had no interest in relieving them from that tax; that, as long as matters stood on their present footing, the heritors would take good care to provide for none but the poor of the county; that if a large fund was created in Dunblane for the support of the poor, that town would become the receptacle of the poor of all the neighboring counties.

It seems, therefore, that as no action can be maintained against the executors for the recovery of this legacy, they are not authorized to retain the funds of the succession, for the purpose of paying it.

Decree accordingly.

NOTE.—The following memorandum was endorsed on the record: "The opinions of Jutices *Slidell* and *Preston*, having no relation to the matter decided, to wit, the Dunblane legacies, will not be reported; the matters to which those opinions relate, being reserved by the decree for the further consideration of the court." GEORGE EUSTIS, C. J.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## CASES NOT REPORTED.

NOTE.—Cases not Reported by Mr. KING.

Succession of Mrs. Dorsey
Kellar v. Merchants' Insurance Company
Eagle v. Tardos
O'Leary v. Sloo
Packwood v. White
Collins and Bruff v. Duffy
Livingston v. Bercier & Co.
Succession of Milne
Carneal v. Smith
Ledda v. Eagan
Mullen v Keating et al.
Delacrox v. Nolan
Sejourner v. Cain
Bland v. Davis et al.
Succession of N. N. Jones
Oliver v. Oliver & Co.
Carrollton Bank v. Patton and Benjamin
Bass v. Curry, Hood and Larche
Beasly v. Canady
Sharp v. Mann
Bacon, use of Stokes, v. Wiggins
Gibson v. Owen
Succession of Pace
Wilson v. Goodrich
Succession of Ramagossa
Leftwich v. Leftwich

Luthon v. Gatewood
Pellerin v. Levois et al.
Rice v Estes
Wightman v. Woods
Ewing and Beatty v. Polk
Dalferes v. Landry
Collins v. Pellerin
O'Brien v. Mushet
Whitlock v. Barrow
Picou v. Valet
McCall v. Landry
McCall v. Rodriguez
Berger and Brown v. Aycock
Granger v. Williams
Stewart v. Bird
Decoux v. Douner
Collins v. Harbour
Foley & Co. v. Ellis
Rogers & Co. v. Crescent Mutual Insurance Company
Rogers & Co. v. Nashville Marine and Fire Insurance Company
Bickel et al. v. 1300 bbls. flour
Shiff v. Antoine
Uzereau v. Mignolet
Stiles v. Cook.